**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KEN ZUPP, | |
| Plaintiff, | CIVIL ACTION NO. 3:CV-12-2333 |
| v. | (JUDGE CAPUTO) |
| CABOT OIL & GAS CORPORATION, | |
| Defendant. | |

## MEMORANDUM

Presently before the Court is Plaintiff Ken Zupp's ("Zupp") Motion for Reconsideration (Doc. 24) of the May 9, 2013 Order granting Defendant Cabot Oil & Gas Corporation's motion to dismiss the Amended Complaint. Because there was no error of law or fact in granting Cabot's motion to dismiss, the motion for reconsideration will be denied.

## I. Background

As set forth in greater detail in the May 9, 2009 Memorandum, (Doc. 20), this action involves the interpretation of an Oil and Gas Lease (the "Lease") under which Zupp leased premises to Cabot for purposes of exploring and producing oil and gas. *See Zupp v. Cabot Oil & Gas Corp.*, No. 12-2333, 2013 WL 1935358 (M.D. Pa. May 9, 2013). Among other relief requested in the Amended Complaint, Zupp sought a declaration that the Lease no longer remains in effect.

Cabot moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Cabot's motion was granted. In granting the motion, I concluded that Zupp failed to state a claim upon which relief could be granted when the facts as alleged in the Amended Complaint were considered in relation to the unambiguous Lease. *See id*. However, Zupp was granted leave to further amend his pleading.

Zupp now seeks reconsideration of the decision granting Cabot's motion to dismiss. Zupp insists that reconsideration is warranted in order to correct a clear error of law or fact. Zupp's motion for reconsideration is now fully briefed and ripe for disposition.

## II. Discussion

### A. Legal Standard

A motion for reconsideration is governed by Rule 59(e) of the Federal Rules of Civil Procedure, which allows a party to move to alter or amend a judgment within twenty-eight (28) days of entry. Fed. R. Civ. P. 59(e). Alternatively, when the reconsideration motion is not to amend or alter the judgment pursuant to Rule 59, Middle District of Pennsylvania Local Rule 7.10 allows a party to seek reconsideration within fourteen (14) days of entry of an order. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985) (citation omitted). A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café, by Lou Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). "[R]econsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.*, No. 05 1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006). Lastly, the reconsideration of a judgment is an extraordinary remedy, and such motions should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

### B. Zupp's Motion for Reconsideration

Zupp raises two arguments in support of his motion for reconsideration. First, Zupp

maintains that I overlooked the "most significant" paragraphs in the Amended Complaint. (Doc. 25, 2.) Second, Zupp asserts that his legal arguments regarding the key provisions of the Lease were overlooked. (*Id*. at 4.)

### 1. Zupp's Factual Allegations Were Not Overlooked

Zupp first argues that significant paragraphs of the Amended Complaint were overlooked or disregarded when Cabot's motion to dismiss was granted. Specifically, Zupp contends that the allegations in paragraphs 28, 30-35, 40, 42(d), and 44 of the Amended Complaint were not properly evaluated in considering whether he adequately stated a claim. By overlooking these allegations, Zupp contends that the motion to dismiss standard was improperly applied in this case.

Zupp's argument is unpersuasive because he fails to recognize that the averments contained in these paragraphs are not factual allegations.[1] These paragraphs simply restate the provisions of the Lease, (*Am. Compl.*, ¶ 30), or aver the meaning of the Lease *as interpreted by Zupp*. For instance, paragraph 32 asserts that "the modifier 'in paying quantities' does not describe the results which must be obtained by 'operations.' 'Operations,' . . . 'must result in production' and thereafter, the oil or gas must be produced 'in paying quantities.' In other words, there must first be production that results from the 'operations.'" (*Am. Compl.*, ¶ 32). Paragraph 33 also lacks a factual allegation, as it merely states that "[t]o give meaning to all of the words in Paragraph 12, the unqualified word 'production' must mean something distinct from 'production in paying quantities.'" (*Am. Compl.*, ¶ 33.) Similarly, Zupp sets forth in paragraph 35 his conclusions as to why

---

[1] Paragraph 34 alleges that "operations" did not result in production and no gas was ever produced in paying quantities. (*Am. Compl.*, ¶ 34.) This paragraph is consistent with the factual background as set forth in the May 9, 2013 Memorandum. *See Zupp*, 2013 WL 1935358, at *1 (the well was completed on June 2, 2012, and the well was then alleged by Cabot to have been shut-in).

3

Paragraph 12 of the Lease "cannot extend the Lease to the present time." (*Am. Compl.*, ¶ 35.) Paragraphs 40, 42(d), and 44 are no different. These paragraphs all involve Zupp's interpretation and/or explanation of why the Lease, as he *construes* it, expired and is no longer in effect. (*Am. Compl.*, ¶¶ 40, 42(d), 44.)

Common to these paragraphs is that they all consist of legal conclusions, namely Zupp's construction and interpretation of the relevant Lease provisions. And, it is clear that in ruling on a 12(b)(6) motion to dismiss, "we accept the factual allegations contained in the Complaint as true, but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011)). In other words, "a legal conclusion artfully pleaded as a factual assertion . . . is not entitled to a presumption of truth." *Id*. (citing *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937). Because the paragraphs Zupp contends were overlooked pled only legal conclusions, *i.e.*, Zupp's interpretation of the Lease language, these paragraphs were not entitled to a presumption of truth. Thus, contrary to Zupp's claim, disregarding the legal conclusions pled in the Amended Complaint in ruling on Cabot's motion to dismiss was not a misapplication of the motion to dismiss standard. Reconsideration is not warranted.

### 2. Zupp's Legal Briefing Was Not Overlooked

Zupp also asserts that reconsideration of the May 9, 2013 Memorandum and Order is necessitated since his arguments regarding the meaning and application of Paragraph 12 of the Lease were overlooked. As a corollary, Zupp seems to suggests that I failed to conduct any analysis of Paragraph 12 of the Lease. (Doc. 25, 4 ("Had the Court done an analysis of Paragraph 12, which Cabot persuaded the Court not to do (*see* the Court's fn.

2), the Court would have recognized the following with respect to Cabot's assertion that it was entitled to rely on Paragraph 4 to extend the Lease.").)

Taking the latter point first, a review of the prior Memorandum rebuts Zupp's claim that an analysis of Paragraph 12 was not performed. In fact, the following heading appears in the Memorandum: "**[t]he Lease was Initially Extended by Paragraph 12 Based on the Allegations in the Amended Complaint**." *Zupp*, 2013 WL 1935358, at *4 (emphasis in original). Thereafter, I noted that: "[u]nder the facts as alleged in the Amended Complaint, the Lease was extended beyond the primary term;" "pursuant to paragraph 12, the Lease remained in effect until ninety (90) days following the June 2, 2012 completion of the well under the facts as alleged in the Amended Complaint;" and "[u]nder Zupp's averments, the well on his property was shut-in while the Lease remained in force pursuant to the 'operations' provision of paragraph 12." *Id.* at *5, *8. Footnote 2 which Zupp cites states only that "[s]ince Cabot relies only on paragraph 4 to support its position that the Lease currently remains in effect, Zupp's arguments as to why the Lease is *not presently in effect* under paragraph 12 need not be addressed." *Id*. at *6 n.2 (emphasis added). Nothing in this footnote, despite Zupp's suggestion otherwise, suggests that an analysis of Paragraph 12 was not performed. Rather, as noted above, I concluded under the facts alleged by Zupp that "pursuant to paragraph 12, the Lease remained in effect until ninety (90) days following the June 2, 2012 completion of the well . . . ." *Id*. at *5. Only after analyzing Paragraph 12 did I determine that the Lease currently remains in effect under Paragraph 4. *Id*. at *5-8. Zupp's suggestion that Paragraph 12 was not analyzed is without merit.

Alternatively, Zupp asserts that to the extent that an analysis of Paragraph 12 was conducted, it was incomplete and clearly erroneous. In that regard, he claims that reconsideration is mandated in this case because I overlooked his "legal argument regarding the meaning and application of Paragraph 12 to the facts pled in this case, and

5

the interrelationship between Paragraphs 12 and 4 of the Lease." (Doc. 25, 4.) Specifically, Zupp contends that I "failed to consider [his] counterstatement of the questions involved, which clearly raised the lack of production as fatal, where a lease has been extended under Paragraph 12 by operations." (*Id*.)

Zupp's request for reconsideration on this point will be denied. For one, his legal briefing was not previously overlooked. The parties' written submissions and positions advanced at oral argument were considered before granting Cabot's motion to dismiss.

Additionally, the meaning of Paragraph 12 as advanced by Zupp is at odds with the Lease's unambiguous language. Paragraph 12 states, in pertinent part:

> If, at the expiration of the primary term, oil or gas is not being produced in paying quantities from the premises, or lands pooled therewith, but Lessee is then engaged in operations thereon, this lease shall remain in force so long as operations are prosecuted (whether on the same or different wells) with no cessation of more than ninety (90) consecutive days, <u>and if</u> they result in production, so long thereafter as oil or gas is produced in paying quantities from the premises or lands pooled therewith. . . .

(*Lease*, ¶ 12 (emphasis added).)

Based on the facts as alleged in the Amended Complaint, while gas was not being produced on Zupp's premises at the expiration of the primary term, Cabot was engaged in "operations" on the premises at that time. Thus, the Lease remained in effect until ninety (90) days following the June 2, 2012 completion of the well under the facts alleged by Zupp. *See Zupp*, 2013 WL 1935358, at *5. Because Cabot fully complied with Paragraph 12 by shutting the well in within ninety (90) days from the cessation of operations, it was then able to rely on the shut-in provision of Paragraph 4 to hold the Lease in effect. *See id*. at *6-8.

Zupp's interpretation of Paragraph 12, however, imposes an additional requirement on Cabot before it can rely on the shut-in provision to maintain the Lease in effect. According to Zupp's interpretation of the Lease, a "[s]hut-in which occurs outside of the primary term of the Lease can only extend the Lease on which there has been production during the primary term or a Lease extended by 'operations' which resulted in production."

(*Am. Compl.*, ¶ 42(d).)  Restated, "[w]hen the Lessee extends a lease by operations, shutting-in without production is not an option." (Doc. 25, 6.)  Zupp's argument focuses on the italicized portion of the following Lease provision: "this lease shall remain in force so long as operations are prosecuted (whether on the same or different wells) with no cessation of more than ninety (90) consecutive days, and if *they result in production, so long thereafter* as oil or gas is produced in paying quantities from the premises . . . ." (*Lease*, ¶ 12 (emphasis added); *see also Am. Compl.*, ¶ 32.)

This provision does not require that "operations" result in production for the Lease to remain in effect.  Instead, the provision explains how the Lease will continue in effect if "operations" result in production after the expiration of the primary Lease term.  Significantly, Zupp's interpretation of the provision set forth above cannot be accepted because in construing Paragraph 12, he ignores the unambiguous conditional "<u>and if</u>" language used in the Lease.  This provision does not require a lease held over by operations to result in production before the well is shut-in.  Rather, the "<u>and if</u>" language clarifies how the Lease will remain in effect when "operations" result in production beyond the primary term.  When read in connection with the shut-in provision of the Lease, Paragraph 12 is entirely consistent with the clear provisions of Paragraph 4.  *See Zupp*, 2013 WL 1935358, at *7. Thus, because Cabot fully complied with Paragraphs 4 and 12 of the Lease, the Lease remains in force under its plain, unambiguous language based on the factual allegations set forth in the Amended Complaint.

### III. Conclusion

For the above stated reasons, Zupp's motion for reconsideration will be denied.

| | |
|---|---|
| June 18, 2013 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |